IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| WELLS FARGO BANK, NATIONAL ASSOCIATION<br><br>Applicant/Plaintiff<br><br>v.<br><br>SONA APIKIAN<br><br>Respondent/Defendant | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | CIVIL ACTION NO. ______________ |

**APPLICATION TO CONFIRM ARBITRATION AWARD**

Applicant/Plaintiff Wells Fargo Bank, National Association ("Wells") respectfully submits this Application to Confirm Arbitration Award rendered on December 20, 2018 against Respondent/Defendant Sona Apikian ("Apikian" or "Respondent"), pursuant to the Federal Arbitration Act (the "FAA"), 9 U.S.C. § 9, and states as follows:

**SUMMARY OF CLAIM**

1. This is a proceeding to confirm the final award of an arbitrator in the total amount of $804,792.69 ("Final Award"). The Final Award was rendered after a full evidentiary hearing (the "Final Hearing") as part of an arbitration proceeding that was conducted under the auspices of the American Arbitration Association ("AAA") in the Southern District of Texas (the "Arbitration"), and during which the parties were each represented by counsel. A true copy of the Final Award is annexed hereto as **Exhibit 1**.

2. The Arbitration concerned amounts due and owing to Wells by Apikian pursuant to that certain "General Continuing Guaranty" that Apikian executed and delivered to Wells on or about November 11, 2014 (the "Guaranty") with respect to all obligations then or thereafter owing to Wells from its borrower, Energy Product Company, LLC ("EPC"). A true copy of the

Guaranty is annexed hereto as **Exhibit 2**. Apikian owns or owned 100% of the equity of parent company of EPC. EPC defaulted in the payment of its obligations to Wells, and Apikian was held liable in the Arbitration in the amount of the Final Award pursuant to the Guaranty.

## THE PARTIES

3. Applicant/Plaintiff Wells is a national banking association and a citizen of the State of South Dakota. Wells' business includes, among several traditional banking activities, providing financial accommodations to privately held small business through the finance and purchase of certain of their accounts receivable. In this instance, Wells entered into an account receivables purchasing agreement (the "Account Purchase Agreement") with EPC, a limited liability company in which Apikian had a controlling ownership interest.

4. Upon information and belief, Respondent/Defendant Apikian is a citizen of the State of California residing at 7708 Camellia Avenue, North Hollywood, CA 91605, or possibly 130 N. Swall Dr. Apt. 302, Beverly Hills, CA 90211-1961. Apikian executed and delivered the Guaranty as an inducement to, and in consideration of, Wells' agreement to enter into the Account Purchase Agreement with EPC.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over this matter, under 28 U.S.C. § 1332(a)(1) because the parties are citizens of different states and the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

6. This Court has personal jurisdiction over Apikian and this matter because the Arbitration was conducted within this District and Apikian expressly consented to arbitrate in the State of Texas in her Guaranty.

7. Venue is proper in the Southern District of Texas because this Application concerns confirmation of an arbitration award that was made within this District and pursuant to the Guaranty, the parties agreed that the Final Award may be entered in any Court having jurisdiction. 9 U.S.C. § 9. Venue is also proper in this District under 28 U.S.C. § 1391 because the matter arises from an arbitration conducted and an award issued in this District. In the Guaranty, the parties agreed that the forum for any arbitration should be in the State of Texas.

**THE PARTIES' AGREEMENT TO ARBITRATE**

8. The parties' agreement to arbitrate is set forth in the Guaranty, which both Wells and Apikian executed. The Guaranty states in pertinent part:

> 20. **ARBITRATION**.
>
> (a) ARBITRATION. THE PARTIES HERETO AGREE, UPON DEMAND BY ANY PARTY . . . TO SUBMIT TO BINDING ARBITRATION ALL CLAIMS, DISPUTES AND CONTROVERSIES BETWEEN OR AMONG THEM . . . WHETHER IN TORT, CONTRACT OR OTHERWISE ARISING OUT OF OR RELATING IN ANY WAY TO THIS GUARANTY AND ITS NEGOTIATION, EXECUTION, COLLATERALIZATION, ADMINISTRATION, REPAYMENT, MODIFICATION, EXTENSION, SUBSTITUTION, FORMATION, INDUCEMENT, ENFORCEMENT, DEFAULT OR TERMINATION; PROVIDED HOWEVER THAT THE PARTIES AGREE THAT, NOTWITHSTANDING THE FOREGOING, EACH PARTY RETAINS THE RIGHT TO PURSUE IN SMALL CLAIMS COURT ANY DISPUTE WITHIN THAT COURT'S JURISDICTION. . . .
>
> (b) GOVERNING RULES. ANY ARBITRATION PROCEEDING WILL (I) PROCEED IN A LOCATION IN THE APPLICABLE STATE [defined as Texas] SELECTED BY THE AMERICAN ARBITRATION ASSOCIATION ("AAA"); (II) BE GOVERNED BY THE FEDERAL ARBITRATION ACT (TITLE 9 OF THE UNITED STATES CODE), NOTWITHSTANDING ANY CONFLICTING CHOICE OF LAW PROVISION IN ANY OF THE DOCUMENTS BETWEEN THE PARTIES; AND (III) BE CONDUCTED BY THE AAA, OR SUCH OTHER ADMINISTRATOR AS THE PARTIES SHALL MUTUALLY AGREE UPON, IN ACCORDANCE WITH THE AAA'S COMMERCIAL DISPUTE RESOLUTION PROCEDURES, UNLESS THE CLAIM OR COUNTERCLAIM IS AT LEAST $1,000,000.00 EXCLUSIVE OF CLAIMED INTEREST, ARBITRATION FEES AND COSTS IN WHICH CASE THE ARBITRATION SHALL BE CONDUCTED IN ACCORDANCE WITH

THE AAA'S OPTIONAL PROCEDURES FOR LARGE, COMPLEX COMMERCIAL DISPUTES (THE COMMERCIAL DISPUTE RESOLUTION PROCEDURES OR THE OPTIONAL PROCEDURES FOR LARGE, COMPLEX COMMERCIAL DISPUTES TO BE REFERRED TO HEREIN, AS APPLICABLE, AS THE "RULES"). IF THERE IS ANY INCONSISTENCY BETWEEN THE TERMS HEREOF AND THE RULES, THE TERMS AND PROCEDURES SET FORTH HEREIN SHALL CONTROL. ANY PARTY WHO FAILS OR REFUSES TO SUBMIT TO ARBITRATION FOLLOWING A DEMAND BY ANY OTHER PARTY SHALL BEAR ALL COSTS AND EXPENSES INCURRED BY SUCH OTHER PARTY IN COMPELLING ARBITRATION OF ANY DISPUTE.

* * *

(d) ARBITRATOR QUALIFICATIONS AND POWERS. ANY ARBITRATION PROCEEDING IN WHICH THE AMOUNT IN CONTROVERSY IS $5,000,000.00 OR LESS WILL BE DECIDED BY A SINGLE ARBITRATOR SELECTED ACCORDING TO THE RULES, AND WHO SHALL NOT RENDER AN AWARD OF GREATER THAN $5,000,000.00. THE ARBITRATOR(S) WILL DETERMINE WHETHER OR NOT AN ISSUE IS ARBITRATABLE AND WILL GIVE EFFECT TO THE STATUTES OF LIMITATION OR REPOSE IN DETERMINING ANY CLAIM. IN ANY ARBITRATION PROCEEDING THE ARBITRATOR(S) WILL DECIDE (BY DOCUMENTS ONLY OR WITH A HEARING AT THE ARBITRATOR'S DISCRETION) ANY PRE-HEARING MOTIONS WHICH ARE SIMILAR TO MOTIONS TO DISMISS FOR FAILURE TO STATE A CLAIM OR MOTIONS FOR SUMMARY ADJUDICATION. THE ARBITRATOR(S) SHALL RESOLVE ALL DISPUTES IN ACCORDANCE WITH THE SUBSTANTIVE LAW OF THE APPLICABLE STATE (AS DEFINED ABOVE [TEXAS]) AND MAY GRANT ANY REMEDY OR RELIEF THAT A COURT OF SUCH STATE COULD ORDER OR GRANT WITHIN THE SCOPE HEREOF AND SUCH ANCILLARY RELIEF AS IS NECESSARY TO MAKE EFFECTIVE ANY AWARD. THE ARBITRATOR(S) SHALL ALSO HAVE THE POWER TO AWARD RECOVERY OF ALL COSTS AND FEES, TO IMPOSE SANCTIONS AND TO TAKE SUCH OTHER ACTION AS THE ARBITRATOR(S) DEEMS NECESSARY TO THE SAME EXTENT A JUDGE COULD PURSUANT TO THE FEDERAL RULES OF CIVIL PROCEDURE, THE APPLICABLE STATE'S (AS DEFINED ABOVE) RULES OF CIVIL PROCEDURE OR OTHER APPLICABLE LAW. JUDGMENT UPON THE AWARD RENDERED BY THE ARBITRATOR(S) MAY BE ENTERED IN ANY COURT HAVING JURISDICTION . . . .

(g) PAYMENT OF ARBITRATION COSTS AND FEES. THE ARBITRATOR(S) SHALL AWARD ALL COSTS AND EXPENSES OF THE ARBITRATION PROCEEDING . . .

**COMMENCEMENT OF THE ARBITRATION**

9. In accordance with the Account Purchase Agreement, beginning in November 2014 and continuing until mid-March 2018, Wells made advances to EPC. EPC defaulted on its obligations under the Account Purchase Agreement by, among other things, the following breaches: (a) EPC's misdirecting payments of accounts receivable to be remitted, not to Wells as required under the parties' agreements, but to itself or other affiliates; (b) EPC's receipt of payments on accounts and other collateral which it failed to hold in trust for the benefit of Wells and failed to immediately deliver to Wells as required under the agreement; (c) EPC's false reporting to Wells of fictitious accounts resulting in an overstatement of its accounts receivable; (d) EPC's refusal to permit Wells to visit and inspect EPC's properties or to review, audit, check and inspect Wells' collateral and its books and records; and (e) the entry of multiple judgment liens against EPC by multiple alleged creditors -- on consent of EPC.

10. Wells first learned of the breaches on or about March 8, 2018. At that time, the debt under the Account Purchase Agreement exceeded $5 million. As a result of the breaches, on March 14 and 19, 2018, Wells notified EPC of the existence of "Events of Default" under the Account Purchase Agreement. In the March 19 letter, as a result of the occurrence of the defaults, pursuant to Section 8.1.3 of the Account Purchase Agreement, Wells notified EPC of the election of Wells to terminate the agreement.

11. On March 29, 2018, after EPC defaulted under the Account Purchase Agreement, Wells commenced the Arbitration against Apikian pursuant to the arbitration provisions of the Guaranty.

12. Apikian was served with the Arbitration demand on March 30, 2018 (the "Demand"). A copy of the Demand, together with the proof of delivery of the Demand, is attached hereto as **Exhibit 3**.

13. On April 3, 2018, the AAA sent a letter to the parties setting April 17, 2018 as the deadline for Respondent to file an Answering Statement to the Demand.

14. While no Answering Statement was filed by the set deadline, EPC's counsel, Robb M. Strom, Esq. of Strom & Associates contacted the AAA to object to the Arbitration and took varying positions on whether he would represent Respondent Apikian in the Arbitration.

15. After several months delay that arose as a result of Respondent's indecision regarding whether she would appear in the Arbitration, on July 23, 2018 the AAA appointed Michael S. Wilk, Esq., counsel at Hirsch & Westheimer, P.C., as the arbitrator (the "Arbitrator"). Attached as **Exhibit 4** is a true copy of the biography of Arbitrator Wilk furnished to the parties by the AAA.

16. On July 30, 2018, through her counsel, Mr. Strom, Respondent renewed her objections to the arbitration process, including the selection of Texas as the locale of the arbitration and the appointment of Arbitrator Wilk.

17. After submissions by the parties to the AAA, including to the AAA's Administrative Review Council ("ARC"), on August 22, 2018, the AAA overruled Respondent's objections and attempt to disqualify Arbitrator and scheduled a preliminary hearing. A true copy of the email from Andrew Barton, Esq., AAA's Vice President advising the parties of ARC's ruling is attached hereto as **Exhibit 5**.

## THE ARBITRATION

**Pre-Hearing Process**

18. Following the ARC's decision confirming the Arbitrator's appointment, on September 7, 2018, the Arbitrator held the first preliminary hearing in the Arbitration and subsequently issued a scheduling order regarding the pre-hearing process and provided Notice that the Final Hearing shall take place on November 28, 2018 at 9:30 a.m. (the "Scheduling Order".) A true copy of the Scheduling Order is attached as **Exhibit 6**.

19. Pursuant to the Scheduling Order, Respondent was provided another opportunity to file an Answering Statement and her objection to the jurisdiction of the Arbitrator and the AAA was preserved for the Final Hearing. The Scheduling Order provided for discovery and directed that discovery was to be concluded by November 21, 2018.

20. In accordance with the Scheduling Order, on November 5, 2018, Respondent served an "Answering Statement and Objection to Jurisdiction by AAA over Respondent in the State of Texas." A true copy of the Answering Statement is attached hereto as **Exhibit 7**.

21. In the Answering Statement, in addition to objecting to the jurisdiction of the AAA, Respondent renewed her objections to the Arbitrator.

22. In response to Respondent's objection concerning alleged inadequate disclosures by the Arbitrator, on November 13, 2018, the Arbitrator made a supplemental disclosure to the parties. The additional disclosures did not satisfy Respondent and she sought again to disqualify the Arbitrator.

23. In accordance with AAA's procedures, Respondent's renewed objection to the Arbitrator was submitted to the ARC for a ruling. On November 20, 2018, ARC issued its ruling to reaffirm the Arbitrator's appointment in the Arbitration. A true copy of the email from Andrew

Barton, Esq., AAA's Vice President to the parties advising of ARC's ruling, is attached hereto as **Exhibit 8**.

**The Final Hearing**

24. The Final Hearing took place as agreed to by the parties on November 28, 2018 at the offices of the Arbitrator's law firm, Hirsch & Westheimer, at 1415 Louisiana Street, 36th Floor, Houston, Texas 77002. Applicant/Plaintiff Wells appeared at the Final Hearing in person. Respondent/Defendant Apikian appeared through counsel via video conference. A true copy of the transcript of the Final Hearing is attached hereto as **Exhibit 9**.

25. In advance of the Final Hearing, the parties agreed to the submission into evidence of forty-five (45) exhibits (the "Joint Exhibits"). A true copy of the index of exhibits that were agreed upon by the parties is attached as **Exhibit 10**. At the Final Hearing, the Arbitrator admitted into evidence the Joint Exhibits without objection.

26. In addition, in accordance with the Scheduling Order, Wells served its Pre-Hearing Brief. Respondent did not submit a Pre-Hearing Brief but submitted the "Declaration of Sona Apikian Demonstrating Lack of Jurisdiction to Proceed with Arbitration in the State of Texas." True copies of the Pre-Hearing Brief and Declaration are attached hereto as **Exhibits 11 and 12**.

27. At the commencement of the Final Hearing, Respondent Apikian was permitted to proceed with motions challenging (a) whether Apikian received adequate notice of the Arbitration, (b) the Arbitrator's impartiality (even though that issue was previously addressed and decided twice by the AAA), and (c) the jurisdiction of the Arbitrator.

28. At the Final Hearing, after hearing the arguments and considering the evidence, the Arbitrator found that Apikian received adequate notice of the Arbitration and reserved

decision on jurisdiction. In addition, in response to Apikian's renewed challenge to the Arbitrator's impartiality, in accordance with the AAA's procedure, during the course of the Final Hearing, the AAA advised the parties the Arbitrator's disclosures to the parties were complete. A true copy of the email dated November 28, 2018 from Andrew Barton, Esq. to the parties is attached hereto as **Exhibit 13**.

29. At the Final Hearing, Wells called one witness, Alexander J. Chobot, Senior Vice President of Wells. Mr. Chobot's testimony concerned, among other things, the defaults by EPC and the calculation of Wells' damages as set forth in the demonstrative exhibit that Mr. Chobot prepared. At the Final Hearing, Apikian cross-examined Mr. Chobot and called Ms. Carla Burhanan, the bookkeeper for EPC, to testify. Both of the witnesses that appeared at the Final Hearing were subject to direct and cross-examination by counsel for the parties.

30. Following the Final Hearing, Wells and Apikian each served post-hearing letters pursuant to a schedule agreed to by the parties supplementing the record and addressing issues that were raised at the Final Hearing. Attached hereto as **Exhibits 14 and 15** are true copies of the post-hearing letters. With the post-hearing letters, the evidentiary portion of the Arbitration hearing concluded and the Arbitrator reserved decision.

31. After the AAA confirmed that the Arbitrator received a copy of the Arbitration transcript, the AAA closed the Final Hearing as of December 5, 2018.

**The Final Award**

32. On December 20, 2018, within 30 days of the closing of the Final Hearing, the Arbitrator issued the Final Award, which was delivered to the parties under the cover of e-mail from Andrew Barton, Vice-President of the AAA. Attached as **Exhibit 16** is a true copy of the cover email from the AAA.

33. In the Final Award, the Arbitrator initially ruled on Respondent's due process and jurisdictional arguments, specifically finding as follows:

> The Arbitrator has jurisdiction pursuant to the broad arbitration agreement contained in Section 20 of the Guaranty Agreement. Section 20(b) of the Guaranty Agreement provides that the arbitration proceeding will be in a location in the Applicable State (defined in Section 19 as the State of Texas), shall be governed by the Federal Administration Act ("FAA") and conducted in accordance with the AAA Commercial Dispute Resolution Procedures ("AAA Rules"). AAA Rule 7(a) empowers the Arbitrator to rule on his or her own jurisdiction. After considering the contentions and arguments of Respondent and the credible evidence, the Arbitrator finds that the Respondent has not been denied due process and that the Guaranty Agreement is not unconscionable or a contract of adhesion. Final Award at ¶ 1.

34. After ruling on the Respondent's due process and jurisdictional arguments, the Arbitrator found that the Respondent is liable to Wells for the "Guarantied Obligations" as defined in Section 1 of the Guaranty Agreement and attorneys' fees and costs in connection with the enforcement of the Guaranty Agreement under Section 12 of the Guaranty Agreement. Final Award at ¶ 2.

35. The Arbitrator further found that such Guarantied Obligations total the principal sum of $639,731.47, plus interest in the amount of $4,517.92. In addition, the Arbitrator ruled that Respondent pay to Wells the amount of $22,998.50 as reasonable and necessary attorneys' fees paid by Wells to one of its law firms and the amount of $104,969.80 as other reasonable and necessary costs of collections, including a consultant's fees. Final Award at ¶ 3.

36. Finally, the Arbitrator also awarded to Wells the administrative fees and expenses of the AAA and the compensation and expenses of the Arbitrator in the total amount of $32,575. Final Award at ¶ 4.

37. The Arbitrator directed that Respondent pay the foregoing amounts to Wells within thirty (30) days of the date of the Award or January 19, 2019. Any unpaid amounts thereafter are to bear interest at 5.25% simple interest until paid.

38. To date, Respondent has failed to pay Wells any amounts under the Final Award.

**FIRST CLAIM FOR RELIEF**
**(Confirmation of the Final Award)**

39. Section 9 of the Federal Arbitration Act, 9 U.S.C. § 9, provides that "any party to the arbitration may apply to the court…for an order confirming the award, and thereupon the court must grant such an order unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title. If no court is specified in the agreement of the parties, then such application may be made to the United States Court in and for the district within which such award was made."

40. The parties agreed that judgment on the award rendered by the arbitrator may be entered in any court having jurisdiction thereof. As set forth in paragraphs 5 and 6, *supra*, this Court has jurisdiction to confirm the award and enter judgment thereto.

41. This Application is also authorized by the Commercial Arbitration Rules of the AAA, specifically Rule 52(c), which provides "that Parties to an arbitration under these rules shall be deemed to have consented that judgment upon the arbitration award may be entered in any federal or state court having jurisdiction thereof."

42. No party to the arbitration has moved to vacate, modify or correct the Final Award under Section 9, 10 or 11 of the Act, 9 U.S.C. §§ 9, 10, 11.

43. The Award was not a product of corruption, fraud, partiality or undo means, and therefore is not subject to any of the grounds listed for vacatur at 9 U.S.C. § 10.

44. The Application is filed within one year of the Award's issuance.

45. To date, Respondent has not voluntarily satisfied the Final Award.

46. No previous request for the relief sought herein has been made to this or any other Court.

**WHEREFORE**, Applicant/Plaintiff Wells Fargo respectfully requests that the Court enter an Order:

(a) Confirming the Final Award entered in the Arbitration;

(b) Directing that judgment be entered in favor of Applicant/Plaintiff Wells Fargo Bank, National Association against Respondent/Defendant Sona Apikian in the amount of $804,792.69, representing the following amounts:

- $639,731.47 in damages, plus pre-award interest in the amount of $4,517.92, for a total payment of $644,249.39 for principal amounts under the Guaranty;
- $127,968.30 for the reasonable and necessary attorneys' fees and other costs of collection incurred by Wells Fargo; and
- $32,575.00 for the administrative fees and expenses of the AAA and the expenses of the Arbitrator judgment;

(c) Interest at the rate of 5.25 percent from January 19, 2019 until such time as the judgment is paid in full; and

(d) Such other relief as is just and proper under the circumstances.

Dated: February 8, 2019

Respectfully submitted,

By: */s/ Yasmin Atasi*
Yasmin Atasi
S.D. Tex. No. 13119
State Bar No. 10435150
yatasi@winstead.com

**WINSTEAD PC**
600 Travis Street, Suite 5200
Houston, Texas 77002
(713) 650-8400 (Telephone)
(713) 650-2400 (Fax)

-and-

By: */s/ Richard G. Haddad*
Richard G. Haddad
*Pro Hac Vice* to be Filed
NY State Bar No. 2226363
rhaddad@otterbourg.com

John Bougiamas
*Pro Hac Vice* to be Filed
NY State Bar No. 2517498
jbougiamas@otterbourg.com

**OTTERBOURG P.C.**
230 Park Avenue
New York, New York 10169
(212) 661-9100 (Telephone)
(212) 682-6104 (Fax)

ATTORNEYS FOR APPLICANT/PLAINTIFF WELLS FARGO BANK, NATIONAL ASSOCIATION

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the Application To Confirm Arbitration Award and attachments has been served on Respondent/Defendant and her counsel via Federal Express on February 8, 2019 at the following addresses:

Sona Apikian
7708 Camellia Avenue
North Hollywood, CA 91605

and

130 N. Swall Dr. Apt. 302
Beverly Hills, CA 90211-1961
Los Angeles County
*Respondent/Defendant*

Robb M. Strom, Esq.
Strom & Associates, APC
12121 Wilshire Boulevard, Suite 1120
Los Angeles, CA 90025
*Respondent/Defendant's Counsel*

Additionally, Applicant/Plaintiff has requested issuance of Summons in A Civil Action, and will serve the foregoing document and attachments on Respondent/Defendant in accordance with the Federal Rules of Civil Procedure and the Federal Arbitration Act.

*/s/ Yasmin Atasi*
Yasmin Atasi